## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL FRIEDMAN *et al.*,              :
                                        :
                                        :
                    Plaintiffs,         :       Civil Action No.:      08-0586 (RMU)
                                        :
            v.                          :       Document Nos.:     5, 11, 16
                                        :
MICHAEL LEAVITT,                        :
In his official capacity as Secretary of the    :    **FILED UNDER SEAL**
Department of Health and Human Services   :
*et al.*,                               :
                                        :
                    Defendants.         :

## <u>MEMORANDUM OPINION</u>

GRANTING THE DEFENDANTS' MOTION TO DISMISS;
DENYING AS MOOT THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;
DENYING AS MOOT THE PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY

## I. INTRODUCTION

This matter is before the court on the defendants' motion to dismiss and the plaintiffs'

motion for a preliminary injunction.  Plaintiffs Michael Friedman, Paul Goldenheim and Howard

Udell ("the plaintiffs") seek declaratory and injunctive relief under 28 U.S.C. § 1331 and 5

U.S.C. § 702 in response to their exclusion from participation in federal healthcare programs.

Defendants Michael Leavitt, Secretary of the Department of Health and Human Services

("HHS"), and Daniel Levinson, Inspector General of HHS (collectively, "the defendants"), move

to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because the plaintiffs

failed to exhaust their administrative remedies after being excluded by the HHS Office of

Inspector General ("OIG").  Finally, the plaintiffs have moved for leave to file a sur-reply in

support of their opposition to the defendants' motion to dismiss.  Because the plaintiffs have not

exhausted the available administrative remedies to contest their exclusions, and because the

plaintiffs are not entitled to a waiver of the exhaustion requirement, the court grants the

defendants' motion to dismiss and denies as moot the plaintiffs' motion for preliminary

injunction.  And because the arguments presented for the first time in the defendants' reply in

support of their motion to dismiss are immaterial to the court's resolution of the foregoing

motions, the court denies as moot the plaintiffs' motion to file a sur-reply.


## II.  FACTUAL & PROCEDURAL BACKGROUND

The following facts are undisputed.  On May 10, 2007, the plaintiffs, corporate officers of

Purdue Frederick Company, Inc. ("Purdue"), entered into an agreement with the United States

whereby each individual pled guilty to a single misdemeanor offense of misbranding a drug in

violation of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 331(a) and (a)(1).

*United States v. Purdue Frederick Co.*, 495 F. Supp. 2d 569, 570 (W.D. Va. 2007).  The charges

and pleas followed a criminal investigation of Purdue's marketing and sale of OxyContin, a

Schedule II controlled substance prescribed to treat moderate to severe pain.  *Id.*  During the

period of investigation, plaintiff Friedman was President and Chief Executive Officer of Purdue;

plaintiff Goldenheim was Executive Vice President of Worldwide Research and Development

and Chief Scientific Officer; and plaintiff Udell was Executive Vice President and Chief Legal

Officer.  Pls.' Mot., Ex. E ¶¶ 3-5.  In an Agreed Statement of Facts that formed the basis of their

guilty pleas, the plaintiffs did not admit personal knowledge of all of the facts in the agreement

between Purdue and the government.  Pls.' Mot., Ex. E ¶ 46.  But each plaintiff did pay a fine of

$5000, and together the plaintiffs paid a total of $34.5 million in disgorgement to the Virginia

Medicaid Fraud Control Unit's Program Income Fund.[1]   Pls.' Mot., Ex. A ("Friedman Decl."),

Attach. 1; Pls.' Mot., Ex. B ("Goldenheim Decl."), Attach. 1; Pls.' Mot., Ex. C ("Udell Decl."),

Attach. 1.

In a related agreement, Purdue pled guilty to a single felony count of misbranding in

violation of the FDCA and was sentenced to a five-year probation period, the statutory maximum

fine of $500,000 and $600 million in monetary sanctions ($160 million to settle civil claims by

state and federal governments, $130 million to settle private civil claims, $5.3 million to the

Virginia Medicaid Fraud Control Unit's Program Income Fund, and a forfeiture of $276.1

million).  Pls.' Mot., Ex. G.  Pursuant to the agreement, Purdue was also excluded from

participation in federal healthcare programs under 42 U.S.C. § 1320a-7(a)(3), a provision

requiring mandatory exclusion for felony convictions relating to healthcare fraud.  *Id.*

On November 15, 2007, OIG sent each plaintiff a Notice of Intent to Exclude.  Pls.' Mot.

at 9.  The notices stated that the plaintiffs were to be excluded from federal healthcare programs

on the basis of their misdemeanor convictions, pursuant to U.S.C. § 1320a-7(b)(1) and (b)(3).

Friedman Decl., Attach. 2; Goldenheim Decl., Attach. 2; Udell Decl., Attach. 2.  The notices

advised the plaintiffs that they had 30 days to respond; the plaintiffs replied in writing, arguing

that OIG lacked the authority to issue exclusions based on their misdemeanor offenses.  *Id.*; Pls.'

Mot. at 9.

On March 31, 2008, OIG sent each plaintiff a second notice indicating that, effective in

20 days, the plaintiffs were excluded from participation in all federal healthcare programs for a

---

[1]     Purdue paid the plaintiffs' fines and disgorgement fee under a previously-existent indemnification agreement.  Pls.' Mot. at 9.

minimum of 20 years.  Friedman Decl., Attach. 3; Goldenheim Decl., Attach. 3; Udell Decl.,

Attach. 3.  The notices explained that the exclusions are due to the plaintiffs' misdemeanor

convictions "related to the introduction into interstate commerce by the Purdue Frederick

Company, Inc. (Purdue) of OxyContin, a Schedule II controlled substance, that was misbranded

in violation of the Food, Drug, and Cosmetic Act." *Id.*  The notices went on to detail that OIG

arrived at the 20-year exclusion period because of the extended period of time over which the

acts resulting in conviction occurred, the acts' significant adverse financial impact on federal

program beneficiaries and the acts' significant adverse physical or mental impact on program

beneficiaries.  *Id.*  Finally, the notices described the plaintiffs' right to appeal the exclusions by

requesting a hearing before an administrative law judge ("ALJ").  *Id.*

      Upon receiving the notices of exclusion from OIG, the plaintiffs filed a motion for a

preliminary injunction on April 7, 2008 to enjoin HHS from excluding them from federal

healthcare programs rather than appealing to an ALJ.  Pls.' Mot.; Defs.' Mot. at 9.  On April 8,

2008, the court entered a temporary restraining order and, by consent of the parties, stayed the

implementation of the exclusions until the court adjudicates the plaintiffs' motion for a

preliminary injunction.  Defs.' Mot. at 9.

      In addition to moving for a preliminary injunction, the plaintiffs filed their complaint on

April 4, 2008 and an amended complaint on April 9, 2008.  The first two counts of the amended

complaint allege that the defendants exceeded their statutory authority in violation of the

Administrative Procedure Act by excluding the plaintiffs based on strict liability misdemeanors

outside the scope of 42 U.S.C. § 1320a-7(b)(1) and (b)(3).  Am. Compl. ¶¶ 43-47, 51-56.  The

third and fourth counts allege that the defendants have violated the plaintiffs' procedural due

process rights by threatening their liberty interests in current and future employment and excluding them from federal healthcare programs without a predeprivation hearing.  *Id.* ¶¶ 60-64, 66-67.  The plaintiffs claim that exclusions implemented and publicized prior to final agency and judicial appeals will cause them substantial, imminent and irreparable harm.  *Id.* ¶ 64.  The defendants filed an opposition to the plaintiffs' preliminary injunction motion and moved to dismiss on May 5, 2008, arguing that because the plaintiffs ignored the administrative appeals process by filing suit without exhausting their administrative remedies, the court lacks jurisdiction.  Defs.' Mot. at 1.  In support of their opposition to the preliminary injunction motion, the defendants also contend that the plaintiffs' failure to exhaust their administrative remedies precludes the possibility of success on the merits, a prerequisite to the granting of a preliminary injunction.  *Id*. at 2-3.

## III.  ANALYSIS

### A.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v.*

*Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack

of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of

establishing by a preponderance of the evidence that the court has subject-matter jurisdiction.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

      Because subject-matter jurisdiction focuses on the court's power to hear the claim,

however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of*

*Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the court is

not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227,

241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  When necessary, the court

may consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

      The D.C. Circuit has noted that courts should consider Rule 12(b)(1) jurisdictional

challenges before Rule 12(b)(6) challenges.  *United States ex rel. Settlemire v. District of*

*Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler &*

*Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)).  Put simply:

> Where . . . the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P.,
> as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge
> first since if it must dismiss the complaint for lack of subject matter jurisdiction, the
> accompanying defenses and objections become moot and do not need to be
> determined."

*Kreindler & Kreindler*, 985 F.2d at 1155-56 (citing 5 FED. PRAC. & PROC. § 1350); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) (holding that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction); *but cf. Jones v. Georgia*, 725 F.2d 622, 623 (11th Cir. 1984) (noting that "exceptions" to this "generally preferable approach" exist when a plaintiff's claim has no plausible foundation or is clearly foreclosed by Supreme Court precedent).

### B.  The Court Dismisses the Plaintiffs' Constitutional Claims

42 U.S.C. § 405(g) allows a plaintiff to obtain judicial review of an agency decision regarding benefits when the following prerequisites are satisfied: "(1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court." *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975).  The final agency decision requirement implies two elements: presentment and exhaustion of administrative remedies. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976).  The presentment element is indispensable to a court's jurisdiction. *Id.*; *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 24 (2000); *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993). The requirement that a claimant exhaust administrative remedies, on the other hand, is waivable. *Mathews*, 424 U.S. at 328.  The plaintiffs argue that their constitutional claims cannot be resolved through the administrative process, and therefore, the court should waive the requirement that they exhaust their administrative remedies. Pls.' Mot. at 11-12, 30-32.  In response, the defendants contend that the plaintiffs have failed to establish the prerequisites for a waiver. Defs.' Mot. at 17-22.

A court may assert jurisdiction notwithstanding a failure to exhaust when the claim raises a colorable constitutional claim that is collateral to a substantive claim for benefits and the plaintiff will suffer irreparable harm if the exhaustion requirement is enforced, or when exhaustion of agency appeals would be futile. *Ryan*, 12 F.3d at 248; *see also Bowen v. City of New York*, 476 U.S. 467, 483-84 (1986); *Heckler v. Ringer*, 466 U.S. 602, 617-18 (1984). Exhaustion is only futile when pursuing further administrative processes would clearly be useless and ultimate denial of the sought-after relief is certain. *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 413 (D.C. Cir. 1998). Mere doubt as to the eventual success of an appeal "is no reason to excuse a litigant's failure to make the attempt." *Id.*

Requiring exhaustion in this case serves the goals of the exhaustion doctrine by allowing an agency to correct internal errors in the administrative process. "If the decision of an 'inferior officer' is so seriously in error that one might justifiably call it a fundamental abuse of the administrative process, this is all the more reason for insisting that the aggrieved party appeal and give the agency a chance to rectify the error." *Marine Mammal*, 134 F.3d at 412. Even assuming, *arguendo*, that OIG abused its authority by imposing the permissive exclusions, HHS's appeal process allows for review of the basis for the exclusion through a full evidentiary hearing. *See* 42 C.F.R. §§ 1001.2007(a)(1)(ii) and 1005.21(g). Therefore, the court rejects the plaintiffs' claim that exhaustion would be futile.

The plaintiffs maintain that futility is not a prerequisite for exhaustion, Pls.' Mot. at 6 n.1, and argue that the court should exempt them from the exhaustion requirement because their challenge to HHS's application of 42 U.S.C. § 1320a-7(b)(1) and (b)(3) is collateral and because the exclusion implemented before exhaustion will cause them irreparable harm, *id.* at 12-13. The

plaintiffs assert, "[O]IG's exclusion of plaintiffs would deprive them of their livelihoods and careers without due process and without statutory authority.  These claims are plainly collateral because they cannot be resolved through the administrative process."  *Id*. at 12.

The plaintiffs correctly note that a court may, in some cases, excuse a failure to exhaust even when it determines that exhaustion would not be futile.  *Id.* at 6 n.1.  Indeed, if the plaintiff fails to demonstrate futility, a court may waive the exhaustion requirement provided the plaintiff brings a clearly collateral constitutional claim and requiring exhaustion would cause irreparable harm.  *Ryan*, 12 F.3d at 248; *see also Barrett v. Shalala*, 14 F.3d 26, 27 (8th Cir. 1994); *Bowen*, 476 U.S. at 483-84; *Heckler*, 466 U.S. at 617-18.

In *Bowen*, the Supreme Court determined that the district court had jurisdiction over collateral claims brought to challenge the Social Security Administration's termination of benefits for mentally ill claimants despite their failure to exhaust agency appeals.  476 U.S. at 483.  The plaintiffs' challenge to the agency's procedures of terminating benefits was entirely collateral because there was evidence of a system-wide policy that countered established regulations by ignoring the facts of any particular case before the agency.  *Id.* at 485.  The Court noted that exhaustion of administrative remedies, whereby the plaintiffs would be required to present the facts of their underlying claim for benefits, would be futile precisely because the agency process ignored those facts, *id.*, and that the claimants would likely suffer irreparable harm while pursuing further agency appeals in the form of medical setbacks, *id.* at 483-84.  Although the *Bowen* Court held that the district court had jurisdiction over a collateral claim challenging the illegal procedures of a benefits agency, it noted that ordinarily, challenges to the discretionary application of agency regulation require exhaustion of administrative remedies and

9

are not collateral because "[i]n the normal course, such individual errors are fully correctable upon subsequent administrative review."  476 U.S. at 484-85.

The plaintiffs in the instant case argue that their claims are collateral, asserting that an ALJ would not have the authority to determine if OIG abused its discretion because to exclude the plaintiffs from federal healthcare programs on the basis of their strict liability misdemeanor offenses does not serve any remedial purpose of the Act.  Pls.' Mot. at 13.  But review of the reasons for the plaintiffs' exclusion falls well within the ALJ's authority.  42 C.F.R. § 1001.2007(a)(1)(ii) (giving an excluded individual the right to request a hearing before an ALJ to challenge "the basis for the imposition of the sanction").  Furthermore, in the case of an adverse ALJ decision, the plaintiffs can appeal the decision to the Departmental Appeals Board, a body with the authority to "affirm, increase, reduce, reverse or remand any penalty, assessment or exclusion determined by the ALJ."  42 C.F.R. § 1005.21(g).  Thus, the plaintiffs' challenge is precisely the kind of question the agency appeals process can address.  *See* 42 C.F.R. § 1001.2007(a)(1)(ii).

Moreover, while the plaintiffs make two constitutional claims in their complaint, Am. Compl. ¶¶ 60, 67, simply stating a claim in terms of a due process challenge or a liberty interest does not make the claim sufficiently collateral to trigger federal court jurisdiction, *see Marine Mammal*, 134 F.3d at 413.  Unlike the plaintiffs in *Bowen* who challenged an agency-wide policy that deprived them of the right to present the facts of each claimant's individual case, *see* 476 U.S. at 483, the plaintiffs in the instant case challenge a specific application of the exclusion provisions rather than their constitutionality, *see* Am. Compl. ¶ 62.  Their claims fall within the "normal course" described in *Bowen* that requires exhaustion because the challenges, although

dressed up in constitutional language, are simply claims for reinstatement that "alleg[e] mere deviation from the applicable regulations in [a] particular administrative proceeding." *Bowen*, 476 U.S. at 484-85.  If applied in error, the bases for the plaintiffs' exclusions are "fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation." *Id.*  Further, there is no "bright-line rule allowing litigants to bypass administrative appeals simply because one or all of their claims are constitutional in nature . . . .  Exhaustion of even constitutional claims may promote many of the policies underlying the exhaustion doctrine." *Id.*  Accordingly, because the administrative appeals process can review the plaintiffs' claims, the challenges' constitutional basis does not render the claims sufficiently "collateral" to escape the exhaustion requirement.[2]

The plaintiffs further argue that their failure to exhaust is justified because they are at risk of irreparable harm.[3]  The plaintiffs claim the exclusions would impede or end their respective careers in the pharmaceutical industry.  Pls.' Mot. at 31-32.  Plaintiff Udell insists that he would be removed from his current position at Purdue and plaintiffs Friedman and Goldenheim contend that they would be prevented from working in the industry where they have spent their careers. *Id.* (averring that "[e]xclusion for [the plaintiffs] is tantamount to forced retirement, and would

---

[2]     Moreover, multiple courts have found that the process of exclusion, though effective prior to a full hearing, affords proper due process. *Thorbus v. Bowen*, 848 F.2d 901, 903-04 (8th Cir. 1998) (citing cases from the Third, Fourth, Ninth and Tenth Circuits) (concluding that "the statutory review process provided in the administrative procedure Congress established is constitutionally sufficient").

[3]     Because the assertion of jurisdiction notwithstanding a failure to exhaust requires both a collateral constitutional claim and the danger of irreparable harm, the court need only determine that the plaintiffs have failed to raise a collateral claim in order to determine that it lacks jurisdiction. *See Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993).  In order to fully address the parties' positions, however, the court will also address the plaintiffs' irreparable injury argument.

effectively deprive each of their livelihoods")  Additionally, the plaintiffs claim their exclusions would injure Purdue by causing it to "lose a key executive at a critical time . . . ironically caus[ing] it to lose the benefit of one of the industry's most effective anti-abuse and diversion advocates." *Id.* at 32-33.  In response, the defendants argue that the plaintiffs' allegations of economic loss are too speculative to support a determination of irreparable injury. Defs.' Mot. at 37-40.  Further, the defendants point out that plaintiff Udell has failed to allege any negative impact that exclusion would have on his employment. *Id*. at 40.  Finally, the defendants dispute the plaintiffs' assertion that exclusion would cause them irreparable harm to their reputations. *Id*. at 41-42.

A plaintiff seeking a waiver of the exhaustion requirement based on irreparable harm must meet a rigorous legal standard.  "The temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  "[A]n insufficiency of savings or difficulties in immediately obtaining other employment . . . will not support a finding of irreparable injury, however severely they may affect a particular individual." *Id.* at 92 n.68.  In the context of exclusion from federal healthcare programs, loss of income through participation in Medicare or Medicaid does not automatically cause irreparable harm.  In *Ritter v. Cohen*, for example, the Third Circuit denied relief to a physician seeking a preliminary injunction to stay his exclusion pending administrative appeal even though ninety-nine percent of his patients were eligible for Medicaid. 797 F.2d 119, 123 (3d Cir. 1986); *see also Thorbus v. Bowen*, 848 F.2d 901, 904 (8th Cir. 1998) (denying injunctive relief to a physician whose practice counted sixty percent of patients eligible for Medicare or Medicaid because he would not would not suffer irreparable injury).  The court in *Ritter* noted, "[the

physician] is not totally dependent on the program, for he may seek private patients.  Moreover, he may continue to treat Medicaid patients and, if he prevails in his appeal, will be eligible for reimbursement."  797 F.2d at 123.  Here, presumably the plaintiffs can seek privately-funded employment in lieu of their current employment; therefore, their potential loss of income as a result of exclusion from federal healthcare programs does not amount to irreparable harm for purposes of a waiver from the exhaustion requirement.  *See id*.

The plaintiffs further allege that the exclusions will cause them irreparable reputational harm, stating, "[b]lacklisting an individual has a practical, real-world effect on prospective health care and pharmaceutical employers that extends beyond the actual legal effect of exclusion." Pls.' Mot. at 30.  But personal reputation is "neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law."  *Paul v. Davis*, 424 U.S. 693, 712 (1976); *Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (holding that even when damage to reputation impairs future employment opportunities there is no constitutional claim).  And there is "no significant loss of reputation . . . inflicted by procedural irregularities" when the damage can be "fully corrected by an administrative determination requiring the agency to conform to the applicable regulations." *Sampson*, 415 U.S. at 91.  The harm to the plaintiffs' reputations can be corrected if they eventually prevail in the HHS administrative review process and succeed in contesting the basis for their exclusions.  The potential for exclusion is already known within the industry.[4]

---

[4]     Although the temporary restraining order prevents HHS from publishing the exclusions and the case is sealed to prevent public knowledge of the exclusions prior to a decision on the pending motions, the plaintiffs' submissions make clear that the exclusions are known throughout the pharmaceutical industry.  The plaintiffs have submitted letters of support sent on their behalf to Inspector General Levinson from numerous groups and industry leaders who are not parties to this case.  *See* Pls.' Mot., Exs. K-N.

Presumably, the industry would also learn of the exoneration that would accompany reinstatement upon a successful administrative appeal.  Accordingly, an allegation of harm to the plaintiffs' reputations, without more, cannot sustain a determination of irreparable injury.

Because the plaintiffs have failed to demonstrate that the administrative appeals process would be futile, that their constitutional claims are collateral, or that they are at risk of irreparable injury, they are not entitled to a waiver of the exhaustion requirement, and therefore, the court lacks jurisdiction over their constitutional claims.

### C.  The Court Dismisses the Plaintiffs' APA Claims

The plaintiffs' complaint also alleges that OIG excluded the plaintiffs in violation of the Administrative Procedure Act ("the APA").  Am. Compl. ¶¶ 43-47, 51-56.  The plaintiffs claim that the basis for the exclusions – their misdemeanor convictions – do not relate sufficiently to the language and remedial purpose of the statutes.  *Id.*  The plaintiffs allege they have no adequate remedy at law to challenge what they characterize as an arbitrary and capricious implementation of the exclusion provisions.  *Id.* at ¶¶ 48, 57.

The plaintiffs erroneously cite the APA and the federal-question jurisdiction statute as sources of this court's jurisdiction over their APA claims.  *Id.* ¶ 20.  While the APA entitles "a person suffering legal wrong because of an agency action . . . to judicial review," 5 U.S.C. § 702, "[t]he APA . . . is not a jurisdiction-granting statute," *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977)).  "Because the APA neither confers nor restricts jurisdiction, we must still determine whether some other statute provides it."  *Trudeau*, 456 F.3d at 185.  Here, jurisdiction is based on 42 U.S.C. § 405.  *See supra* Part III.B.  Thus, as with the plaintiffs' constitutional claims, the court lacks jurisdiction

14

over the claims brought under the APA because the plaintiffs have failed to comply with the

exhaustion requirements of § 405.  *See Ass'n of Am. Med. Colls. v. Califano*, 569 F.2d 101, 112

(D.C. Cir. 1977) (explaining that, given the fact that a plaintiff bringing a constitutional claim

must satisfy the exhaustion requirement, Congress could not have intended that the same plaintiff

could allege a violation of a statutory obligation without being required to attempt to resolve his

challenge in the course of administrative review).  Accordingly, the court dismisses the plaintiffs'

APA claims for failure to exhaust their administrative remedies.[5]

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss, denies as

moot the plaintiffs' motion for a preliminary injunction and denies as moot the plaintiffs' motion

for leave to file a sur-reply in support of their opposition to the defendants' motion to dismiss.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued

this 5th day of December, 2008.

RICARDO M. URBINA
United States District Judge

---

[5]     The court denies as moot the plaintiffs' motion to file a sur-reply to the defendants' reply in
support of their motion to dismiss because the arguments presented for the first time in the
defendants' reply are immaterial to the court's dismissal of the plaintiffs' claims.  *See Winston &
Strawn L.L.P. v. Fed. Deposit Ins. Corp.*, 2007 WL 2059769, at *5 n.3 (D.D.C. July 13, 2007)
(denying motions for leave to file sur-replies "[b]ecause the arguments made in the proposed
sur-replies would not affect the Court's analysis").